IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 3:08-00241 |
| ) | Judge Trauger |
| LAVAR SUMMERS ) | |

## MEMORANDUM AND ORDER

Before the court is the defendant's Motion to Suppress Evidence and Statements (Docket No. 46), to which the government has responded (Docket No. 49). For the reasons discussed herein, the defendant's motion is denied.

## FACTS

On September 16, 2008, officers from the Metropolitan Nashville Police Department conducted a search of the home of the defendant, Lavar Summers, pursuant to a search warrant. During the search, the officers recovered a plastic bag containing 28.2 grams of crack cocaine, two sets of digital scales, one large set of scales, a .22 caliber Iver Johnson handgun with a magazine containing ten rounds of ammunition, an infra-red surveillance camera, two plastic bags containing 1.0 grams of marijuana, and three boxes containing 111 rounds of .22 caliber ammunition. (Docket No. 47 Ex. 1.) Also during the course of the search, Mr. Lavar made certain statements of the police to the effect that everything in the house was his and that he was "claiming it all." (*Id.*)

The search was conducted pursuant to a warrant that was issued by a judge on the basis of an affidavit submitted by Detective Dale W. BeCraft of the Metropolitan Nashville Police Department. (Docket No. 47 Exs. 2 & 3.) The affidavit seeks a warrant to search the premises

of 311 Nix Drive, Nashville, Davidson County, Tennessee, and describes the premises as follows:

> The target structure is located at 311 Nix Drive. The target structure is [a] one story 2 unit residential duplex. The target structure is red brick with white trim. There are two mailboxes located directly in front of the target structure on Nix Drive. These mailboxes are side by side and are black in color. The mailbox on the right has the numbers and letter 311 A. The mailbox on the left has the letter B hand painted on this mailbox. Facing the target structure from Nix Drive the target door is located on the right side of the structure this is the only door on this side of the target structure. The target door has an outer aluminum screen door which is white in color and an inner door.

(Docket No. 47 Ex. 2 at 1.)

The affidavit provides that, within the previous seventy-two hours, Detective BeCraft had received, from a confidential informant,[1] "information that illegal narcotics were being sold from inside the subject premises." (*Id.* at 2.) The affidavit then recounts the investigation that police conducted on the basis of that information. Specifically, the police arranged a "controlled buy," providing the confidential informant with photocopied "buy money" and equipping the confidential informant with an electronic listening device. (*Id.*) During the course of the controlled buy, Detective BeCraft maintained surveillance of 311 Nix Drive, where he initially observed "a light blue Ford Crown Victorian" [*sic*] parked in the driveway, while another detective maintained surveillance of the confidential informant. (*Id.*)

The confidential informant called "a male subject known as 'V'" at the phone number 568-7543 and ordered a quantity of crack cocaine to be delivered to the confidential informant's

---

[1]The affidavit does not name the confidential informant, but states that Detective BeCraft would provide the name of the confidential informant to the issuing judge and that the informant had provided reliable information that resulted in the recovery of illegal narcotics in the past. (Docket No. 47 Ex. 2 at 2.)

current location. (*Id.*) According to Detective BeCraft's affidavit, "moments" after the confidential informant made this phone call, Detective BeCraft observed an individual, whom the affidavit describes as "a male black," exit the residence at 311 Nix Drive and enter the Ford Crown Victoria that Detective BeCraft observed in the driveway. (*Id.*) Other detectives followed the vehicle to the confidential informant's location, and were able to ascertain that the vehicle's license plate number was 816NHN. (*Id.*)

When the Ford Crown Victoria arrived at the confidential informant's location, the confidential informant approached the vehicle and had a brief conversation and hand-to-hand transaction with the driver, during which the driver handed the confidential informant a substance that subsequently tested positive for cocaine base. (*Id.*) The Ford Crown Victoria then traveled back to 311 Nix Drive, under surveillance, and Detective BeCraft observed the same individual he saw previously exit the vehicle and enter the residence. (*Id.*)

According to his affidavit, Detective BeCraft then conducted further investigation that revealed that a Ford Crown Victoria with the license plate number 816NHN was registered to Lavar Summers. (*Id.*) Detective BeCraft also discovered that the phone number 568-7543 was listed for Lavar Summers at the address 311 Nix Drive Apartment B, Madison, Tennessee, and electric utility records revealed service in the name of Lavar Summers at the Nix Drive address. (*Id.*) Further, arrest records revealed that Lavar Summers had a prior arrest for narcotics offenses and listed a phone number of 568-7543, and drivers' license records listed Lavar Summers' address as the Nix Drive address. (*Id.*)

3

## ANALYSIS

The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Mr. Summers has moved to suppress both the evidence seized during the search and his incriminating statements on the grounds that the warrant was overbroad, the affidavit supporting the warrant was inadequate, and the description of the place to be searched contained in the affidavit was inadequate.[2]

### I.  Particularity and Overbreadth of the Warrant

"General search warrants which fail to particularly describe the things to be searched for and seized 'create a danger of unlimited discretion . . . of what is subject to seizure and a danger that items will be seized when the warrant refers to other items.'" *U.S. v. Ables*, 167 F.3d 1021, 1033 (6th Cir. 1999) (citing *United States v. Savoca*, 761 F.2d 292, 298-99 (6th Cir. 1985)). Thus, a warrant must be "confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *U.S. v. Brown*, 984 F.2d 1074, 1077 (6th Cir. 1993) (citing *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985)). "However, the degree of specificity required is flexible and will vary depending on the crime involved and the types of items sought." *Ables*, 167 F.3d at 1033 (citing *United States v. Henson*, 848 F.2d 1374, 1383 (6th Cir. 1988)). Moreover, where only a portion of a warrant

---

[2]Mr. Summers has not made any arguments as to why his incriminating statements should be suppressed beyond the arguments he makes as to why the search, during which he made those statements, was unconstitutional.

4

contains overbroad language in violation of the Fourth Amendment, "the broad portion may be redacted and the balance of the warrant considered valid." *Brown*, 984 F.2d at 1077.

Mr. Summers argues that the warrant was overbroad to the extent that it authorized the seizure of what Mr. Summers characterizes as "any items of personal property" located within his residence, including "rental receipts, mortgage payments, utility bills, photographs of any persons, and all financial records." (Docket No. 47 at 4-5.) Mr. Summers' argument, however, is premised on a selective reading of the warrant, which provides that, in addition to controlled substances, controlled substances paraphernalia, and other evidence of criminal activity, the residence was to be searched for "any indicia [of] ownership, dominion, or control over the premises to be searched including rental receipts, mortgage payments, utility bills, photographs of any persons involved in the criminal conduct, all financial records pertaining to the disposition of the proceeds of the violation of the [applicable] criminal laws." (Docket No. 47 Ex. 3.) Thus, the warrant does not authorize the seizure of any item of personal property, as Mr. Summers contends, but, rather, the seizure of such items *to the extent they are relevant to the crimes alleged*. The seizure of such items is permissible, *e.g.*, *U.S. v. Greene*, 250 F.3d 471, 477 (6th Cir. 2001) (approving warrant authorizing the seizure of, *inter alia*, "all monies, books, records used in connection with illegal narcotic trafficking" and "evidence of ownership, occupancy, or control of the premises"), and, moreover, such items are relevant to demonstrating who was in control of the premises, a fact that may establish possession over the items seized, *U.S. v. Gardner*, 488 F.3d 700, 713 (6th Cir. 2007) (noting that proof of an individual's "dominion over the premises" establishes constructive possession of a firearm). Further, even if the warrant were overbroad, this flaw does not render the entire warrant invalid but merely

5

requires the suppression of evidence seized pursuant to the portion of the warrant that is overbroad. Here, none of the items seized fall under that portion of the warrant that Mr. Summers claims is overbroad.

As such, the warrant is not unconstitutionally overbroad.

## II. Sufficiency of the Affidavit

In considering the sufficiency of a search warrant and supporting affidavit, courts apply a "totality of the circumstances" approach. *U.S. v. Higgins*, 557 F.3d 381, 389 (6th Cir. 2009); *U.S. v. Allen*, 211 F.3d 970, 972 (6th Cir. 2000) (citing *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983)). A court's review of the evidence supporting a finding of probable cause is "limited to the information presented in the four-corners of the affidavit." *U.S. v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (citations omitted). An affidavit is sufficient if there existed "a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." *U.S. v. Trujillo*, 376 F.3d 593, 602 (6th Cir. 2004) (citing *U.S. v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004)); *see also Gates*, 462 U.S. at 238-39; *Higgins*, 557 F.3d at 289.

Where the contents of an affidavit are premised on an informant's tip, there must be some indicia of the informant's reliability or, in the absence of such indicia, "substantial independent police corroboration" of the information provided by the informant. *Allen*, 211 F.3d at 976; *U.S. v. Jackson*, 470 F.3d 299, 307 (6th Cir. 2006). Thus, an affidavit may be sufficient "where a known person, named to the magistrate, to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence, in the recent past." *Allen*, 211 F.3d at 976. Alternatively, an affidavit containing little information about an informant's

6

reliability may be sufficient if it states that the police corroborated "significant parts" of the information received from the informant. *Jackson*, 470 F.3d at 307. In addition, an affidavit "must state a nexus between the place to be searched and the evidence sought." *U.S. v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008).

Mr. Summers asserts that the information contained in the affidavit was insufficient to support a finding of probable cause. (Docket No. 47 at 5-6.) He premises this argument on five alleged shortcomings in the affidavit: (1) that the affidavit describes Mr. Summers' Ford Crown Victoria as light blue when it is, in fact, light gray; (2) that the affidavit does not identify the name of the confidential informant; (3) that the affidavit does not allege that Mr. Summers possessed or used a firearm in connection with any criminal activity; (4) that the affidavit does not identify Mr. Summers but only refers to him as a "black male"; and (5) that the affidavit does not allege that any criminal activity took place in Mr. Summers' home. (*Id.* at 5.) Considering the totality of the circumstances, however, the affidavit provides ample evidence of probable cause, and none of these facts undermine that conclusion.

First, the fact that the affidavit describes the car as light blue rather than light gray is entirely irrelevant to the finding of probable cause, given the fact that the car was under constant surveillance from the time it was parked in the driveway at 311 Nix Drive, to the meeting with the confidential informant, and then back to 311 Nix Drive. Moreover, the car's identity and connection to Mr. Summers was later confirmed by cross-referencing the car's license plate number, the address and individual to whom it was registered, and the address contained on Mr. Summers' driver's license record.

Also unavailing to Mr. Summers is the fact that the affidavit does not provide the name of the confidential informant. Affidavits based on information received from unnamed confidential informants are routinely upheld, *see, e.g.*, *U.S. v. Coffee*, 434 F.3d 887, 892-85 (6th Cir. 2006) (holding that affidavit based on information received from unnamed confidential informant established probable cause where affidavit detailed substantial police corroboration), and maintaining the confidentiality of informants' identities is necessary to the effective functioning of many police investigations and operations. Moreover, the affidavit provides not only that the confidential informant would be identified to the issuing judge, but also that the informant had a history of providing reliable information to the police and that the police conducted the controlled buy to corroborate the information provided by the informant.

The fact that the affidavit does not allege that Mr. Summers possessed or used a firearm also does not undermine the finding of probable cause, as it is appropriate to rely on an affiant's experience and training to establish a connection between drug crimes and the possession of firearms. *See, e.g.*, *United States v. Blair*, 214 F.3d 690, 696 (6th Cir. 2000) (upholding warrant seeking financial records where affiant testified, on the basis of his experience, about the likelihood that a drug trafficker would keep financial records); *cf. U.S. v. Hardin*, 248 F.3d 489, 499 (6th Cir. 2001) ("This Court has held many times that guns are 'tools of the trade' in drug transactions."). Here, the affidavit specifically provides, on the basis of Detective BeCraft's training and experience, that "[d]rug dealers commonly have in their possession or in their residences and businesses firearms" (Docket No. 47 Ex. 2 at 3-4), which, in connection with the evidence of criminal drug activity taking place at 311 Nix Drive, establishes sufficient probable cause that firearms would be found at that residence.

Mr. Summers' assertion that the affidavit failed to provide his name also does not save his argument. The affidavit makes clear that, at the time of the controlled buy, Mr. Summers' identity had not be ascertained and that he was known to the confidential informant as simply "V." However, the affidavit makes explicit that subsequent investigation revealed that the phone number at which the confidential informant contacted "V" was associated with both the 311 Nix Drive address and with Mr. Summers, naming him by his given name. Moreover, Mr. Summers responded immediately to the confidential informant's phone call to that number, and further police investigation of utility records, arrest records, and driver's license records corroborated the connection between Mr. Summers, the phone number at which the confidential informant contacted "V," and the 311 Nix Drive address.

Finally, Mr. Summers argues that the affidavit does not allege that any criminal activity took place in Mr. Summers' residence. However, Mr. Summers was under surveillance for the duration of the controlled buy. Immediately after the confidential informant placed the phone call to "V," Mr. Summers left the residence at 311 Nix Drive, drove to meet the confidential informant and sold him crack cocaine, and then returned to 311 Nix Drive. Those circumstances are sufficient to establish probable that evidence of a crime would be found at 311 Nix Drive, even if the drug transaction itself did not take place on the premises.

Considering the totality of the circumstances, the affidavit on which the warrant was based was sufficient to support a finding of probable cause.

### III. Sufficiency of the Description of the Place to be Searched

The Sixth Circuit has held that, in evaluating the question of whether a warrant describes the placed to be searched with sufficient particularity, courts must consider "(1) whether the

9

place to be searched is described with sufficient particularity as to enable the executing officers to locate and identify the premises with reasonable effort; and (2) whether there is reasonable probability that some other premises may be mistakenly searched." *United States v. Hang Le-Thy Tran*, 433 F.3d 472, 479 (6th Cir. 2006) (citing *Knott v. Sullivan*, 418 F.3d 561, 568 (6th Cir. 2005)). The test "is not whether the description is technically accurate in every detail," and, thus, a factual discrepancy in a warrant's description of the place to be searched does not automatically render a warrant invalid. *Id.* at 479-80.

Mr. Summers argues that the warrant does not particularly describe the place to be searched to the extent that the warrant lists the address as 311 Nix Drive, Nashville, Tennessee, whereas Mr. Summers' address is actually 311 Nix Drive, Madison, Tennessee. (Docket No. 47 at 5-6.) However, despite this claimed error,[3] the warrant still describes the premises with sufficient particularity. In addition to the address, the warrant provides a detailed physical description of the premises,[4] which would both aid officers in locating and identifying the property and make it unlikely that other premises would be mistakenly searched. *Hang Le-Thy Tran*, 433 F.3d at 480 ("We have repeatedly upheld warrants . . . where one part of the description is inaccurate, but the description has other accurate information to identify the place

---

[3]It is worth noting that the Nashville address is not technically inaccurate, as Madison, Tennessee is not separately incorporated and is governed by the Metropolitan Government of Nashville and Davidson County.

[4]The warrant contains the same detailed description of the premises as the affidavit, describing the residence as a "one story 2 unit residential duplex" that is "red brick with white trim" and has "two mailboxes located directly in front" that are "side by side and are black in color," one of which bears "the numbers and letter 311 A," and the other of which "has the letter B hand painted," and a door "located on the right side of the structure" that "has an outer aluminum screen door which is white in color and an inner door." (Docket No. 47 Ex. 3.)

10

to be searched with particularity."). Likewise, the fact that Detective BeCraft served as both the affiant and the executing officer and that the premises were under constant surveillance provide additional evidence that the premises were described sufficiently and that a mistaken search was unlikely, *id.* (noting that fact that the executing officer was also the affiant and had already been to the premises provides evidence that description was sufficiently particular); as does the fact that the residence searched was actually the premises that was intended to be searched, *U.S. v. Mann*, 389 F.3d 869, 877 (6th Cir. 2004) (noting that the fact that the premises searched were those intended to be searched constitutes evidence that the warrant described the location with sufficient particularity).

Therefore, the warrant describes the place to be searched with sufficient particularity.

### **CONCLUSION**

For the reasons expressed herein, the Motion to Suppress Evidence and Statements filed by the defendant Lavar Summers is hereby **DENIED**.

It is so Ordered.

Entered this 18th day of June 2009.

_____
ALETA A. TRAUGER
United States District Judge

11